NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | : : : : | |
| Applicant, | : : | Civil No: 11-0066 (FLW) |
| v. | : : | **OPINION** |
| | : : | |
| JOSEPH ABBONDANTE, | : : | |
| Respondent. | : : | |

**WOLFSON, United States District Judge:**

      The Securities and Exchange Commission ("SEC") has applied to enforce an order it issued against Respondent Joseph Abbondante ("Respondent"). Respondent was sanctioned by the National Association of Securities Dealers ("NASD") for engaging in a Ponzi scheme that defrauded investors of over $275,000. On January 6, 2006, the SEC issued an opinion and entered a separate order ("SEC Order") sustaining that sanction. Because Respondent has failed to comply with the NASD sanction or the SEC Order, the SEC now asks this Court to direct his compliance. The Court has jurisdiction pursuant to Section 21(e) of the Security Exchange Act of 1934 ("Exchange Act"), codified as 15 U.S.C. § 78u(e)(1). For the reasons that follow, the Court grants the SEC's application for an order.

      **I.**      **BACKGROUND**

      The NASD imposed sanctions against Respondent for violating the NASD Conduct Rules and Sections of the Exchange Act. The following facts are based on findings made by the

1

NASD and the SEC.  In 1999, while employed as a general securities representative of Chase Investment Services Corp. ("Chase"), Respondent sold investments in a Ponzi scheme to three customers (Richard Simon, Anthony Casino, and Kenneth Curry).  Respondent made $90,000 in commissions from selling the fraudulent investments that resulted in over $276,265 of losses for the customers.  The NASD found that Respondent had violated Section 10(b) and Rule 10b-5 of the Securities Exchange Act and 2110 and 2120 of the NASD Conduct Rules by making material misrepresentations and omissions in connection with the sale of the Ponzi scheme investments and violated NASD Conduct Rules 2110 and 3040 by not notifying, or getting approval from, Chase for his activities.  The NASD ordered Respondent to pay court costs and restitution, plus interest, to his victims.  The NASD is Self-Regulating Organization ("SRO") under the SEC.[1]  A self-regulating organization is a nongovernmental organization that is statutorily empowered to regulate its members by adopting and enforcing rules of conduct, especially those governing fair, ethical, and efficient practices.  SEC v. McCarthy, 322 F.3d 650, 653 (9th Cir. Cal. 2003) ("The [Securities Exchange Act of 1934] allows for the creation of 'national securities associations' for brokers and dealers and authorizes self-regulating organizations ('SROs') within the securities industry to self-regulate their  members, subject to federal oversight by the Commission. 15 U.S.C. § 78o-3(a).").  The NASD also barred Abbondante from associating with any other NASD member firm in the future.

     Respondent appealed the sanction to the SEC.  After independently reviewing the record, the SEC issued its own opinion and order affirming the NASD sanction.  Respondent then appealed the SEC order to the Second Circuit.  The Circuit affirmed the order in its entirety.

---

[1] In 2007, the NASD was consolidated with the New York Stock Exchange regulatory operations to form the Financial Industry Regulatory Authority ("FINRA").  Buscetto v. Fin. Indus. Regulatory Auth., No. 11-6308, 2012 U.S. Dist. LEXIS 65116, at *2, n.2 (D.N.J. May 9, 2012).

Abbondante v. SEC, 209 F. App'x 6, 7-8 (2d Cir. 2006) (finding that substantial evidence supported the SEC's findings and that Abbondante's arguments were without merit). Thus far, Respondent has failed to make any payments.

## II. LEGAL STANDARD

Summary proceedings to enforce an SEC order in a district court are authorized by the Exchange Act. In particular, § 21(e) of the Exchange Act provides:

> Upon application of the Commission the district courts of the United States . . . shall have jurisdiction to issue writs of mandamus, injunctions, and orders commanding (1) any person to comply with the provisions of this chapter, the rules, regulations, and orders thereunder, [or] the rules of a national securities exchange or registered securities association of which such person is a member or person associated with a member . . . .

15 U.S.C. § 78u(e). As such, this provision empowers the SEC to apply to a district court[2] for the enforcement of its orders that have sustained the decisions of an SRO, such as the NASD or FINRA. See SEC v. Mohn, 465 F.3d 647, 652 (6th Cir. 2006); SEC v. Vittor, 323 F.3d 930, 935 (11th Cir. 2003); McCarthy, 322 F.3d at 655, 659; Lang v. French, 154 F.3d 217, 222 (5th Cir. 1998); SEC v. Pinchas, 421 F. Supp. 2d 781, 783 (S.D.N.Y. 2006). That summary proceedings are authorized by § 21(e) has been recognized in the Third Circuit as well. See SEC v. J.W. Barclay & Co., 442 F.3d 834 (3d Cir. 2006); SEC v. Geller, No. 07-1567, 2008 U.S. Dist. LEXIS 3278 (D.N.J. Jan. 16, 2008).

Summary proceedings may be "conducted without formal pleadings, on short notice, without summons and complaints, generally on affidavits, and sometimes even ex parte." McCarthy, 322 F.3d at 655 (quoting N.H. Fire. Ins. Co. v. Scanlon, 362 U.S. 404, 406-07 (1960)). Fairness and due process require a district court to afford a respondent the opportunity to be heard before ruling on a § 21(e)(1) application. McCarthy, 322 F.3d at 659-60. A district

---

2 The matter is now before this Court because Respondent lives in Manalapan, New Jersey.

court, however, is precluded from any reconsideration of the disciplinary action taken by the SEC and NASD.  Pinchas, 421 F. Supp. 2d at 783.

### III.     DISCUSSION

#### a. Subsection 21(f) Does Not Apply

Respondent has not, and cannot, dispute the underlying facts of the SEC Order.  Nor does he dispute that he has failed to comply with the Order.[3]  Rather, he argues that the SEC must overcome additional procedural hurdles before it can bring the instant motion.  Despite what appears to be clear authority for the Court to enforce the SEC Order, Respondent argues that § 21(e) is limited by the subsequent subsection, § 21(f), which provides:

> Notwithstanding any other provision of this chapter, the [SEC] shall not bring any action pursuant to subsection (d) or (e) of this section against any person for violation of, or to command compliance with, the rules of a [SRO] unless it appears to the [SEC] that (1) such SRO…is unable or unwilling to take appropriate action against such person in the public interest and for the protection of investors, or (2) such action is otherwise necessary or appropriate in the public interest for the protection of investors.

15 U.S.C. § 78u(f).  Respondent argues that where the purpose of an action is to enforce a previous SEC order to command compliance with SRO rules, this Court is limited by § 21(f) of

---

[3] Apparently, the tribunal that initially heard the case did not impose as high of a sanction upon Respondent.  Nevertheless, after both parties appealed that decision, the NASD increased the sanction and barred Abbondante from the profession.  Respondent complains of this procedure:

> However, upon appeal to NAC, the appellate review arm of the NASD, that body found, in its infinite wisdom without recourse to hearing the witnesses and testing their demeanor and reliability, the need to increas [*sic*] the amount of restitution, and then barred Mr. Abbondante for life.

Resp. Opp., at 3.  Nevertheless, Respondent does not appear to argue that this is a reason not to enforce the SEC Order nor could he as the substance of the SEC Order is beyond this Court's review.  I note, too, that counsel's glibness, such as sardonically referring to the NAC's "infinite wisdom" or describing one of the Ponzi scheme victims as "no more than a dolt," is not only entirely superfluous to, and unsupportive of, his client's arguments, but is beneath the high standards of the legal profession.

the Exchange Act. According to Respondent, the SEC Order was not an "order" because it only affirmed the NASD sanction and therefore it is incumbent upon the SRO to enforce its own order unless the SEC has shown that the NASD was unable or unwilling to enforce its own rules. In making this argument, Respondent ignores the holding of case law directly on point and directs the Court's attention to a dissenting opinion that he finds more persuasive.

The effect of § 21(f) on the SEC's ability to seek an order from the district court was squarely addressed in Vittor, 323 F.3d 930. The majority in Vittor held that an SEC order sustaining sanctions imposed by the NASD is "unquestionably an order" for the purposes of § 21(e)(1) and is not limited by § 21(f). Vittor, at 934 and 935. In other words, § 21(f) does not apply where, such as is the case here, there has been an SEC order sustaining NASD fines and restitution orders. Id. at 936. Rather, it "only applies when the SEC initiates its own enforcement 'action…for violation of, or to command compliance with, the rules of a self-regulatory organization,'" but not when "the SEC made application to the district court for an order to compel compliance with an SEC order sustaining an NASD disciplinary action." Id. (quoting 15 U.S.C. § 78u(f)). I am not presented with a situation where the SEC instigated an action to enforce the rules of the NASD. If it had, then the SEC would be required to demonstrate why the NASD itself had not already taken similar action, but the same is not true when the SEC is enforcing a NASD sanction, which had already issued. Therefore, I find that § 21(f) does not apply.

Respondent urges me to ignore the Vittor majority and, instead, adopt the dissent as law. In his dissent in Vittor, Judge Black wrote that "while it may be true that § 21(e) acknowledges a distinction between independent SEC actions to enforce the rules of a SRO and SEC actions to enforce a previous SEC order, § 21(f) can apply to either type of action." Vittor, at 936. Judge

5

Black concluded that "as long as the purpose of the SEC action to enforce a previous SEC order is to command compliance with the rules of a SRO, § 21(f) limits the SEC's ability to bring the action in federal court." Id.

No matter how persuasive the dissent might seem to Respondent, this Court, like all courts that have examined the issue, is more swayed by the Vittor majority. See Mohn, 465 F.3d at 653 ("This Court reaches the same conclusion as the Eleventh Circuit in Vittor and finds that § 21(f) does not preclude the SEC's application for an enforcement order."); McCarthy, 322 F.3d at 655 ("The Exchange Act does not limit or restrict what types of Commission orders may be enforced through § 21(e) other than to state that the Commission's order must have been issued pursuant to the Exchange Act or the rules and regulations promulgated thereunder."); and Lang, 154 F.3d at 222 ("The fact that the SEC's order derives from the agency's adjudicatory role in the NASD's self-regulatory process…has no bearing on the jurisdictional grant embodied in section 21(e)(1)."). While not addressing the applicability of § 21(f), the Third Circuit has also held that § 21(e) grants "the district courts of the United States, upon application by the SEC…jurisdiction to issue orders commanding any person to comply with the SEC's orders." SEC v. J.W. Barclay & Co., 442 F.3d 834, 844 (3d Cir. 2006). ("Accordingly, the SEC was entitled to obtain judicial relief against Barclay in the District Court when Barclay violated the Order by failing to pay its penalty within thirty days. Barclay's failure to pay the penalty thus was an act giving rise to a cause of action under the Exchange Act.").

No court has adopted the dissent. Yet Respondent cites to SEC v. Sky Way Global, LLC, 710 F. Supp. 2d 1274, 1292 (M.D. Fla. 2010) to suggest that court adopted similar reasoning. Respondent clams that the Sky Way opinion held that "before exercising a power described in (1) or (2), it must appear to the Commission (1) that the self-regulatory organization was unable

or unwilling to take appropriate action…" Sky Way, at 1292.  This was not a holding, but merely a quote from a Senate Report discussing the contours of § 21(f).  Id. (quoting S. REP. NO. 94-75, at 2 (1975), reprinted in 1975 U.S.C.C.A.N. 179.  Sky Way does not adopt the Vittor dissent, overrule Vittor, or even address the issue of § 21(f)'s applicability to an SEC order affirming an SRO's order, but rather states quite plainly that § 21(e) "explicitly provides for district court jurisdiction over [an] action[] brought to enforce SEC-ordered sanctions, as well as an action to enforce sanctions imposed by FINRA and affirmed by the Commission." Id. (quotation omitted).  Respondent also cites Fiero v. Financial Industry Regulatory Authority, Inc., 606 F.Supp.2d 500 (S.D.N.Y. 2009) as authority that an SRO can independently enforce a judgment against a member.  Resp. Opp., at 7.  This case is inapposite as the issue of whether a SRO could have brought the application rather than the SEC is not relevant.  Even if a SRO does not need the SEC to seek such an order, it is undisputed that SROs are under the auspices of the SEC and nothing precludes the SEC from enforcing its own order.  Here, as in Vittor and its progeny, the SEC is not initiating this action to enforce an order of the NASD, nor is the SEC seeking to unilaterally punish Respondent for violations of the NASD code.  Instead, the SEC is seeking to enforce an order already made by the SEC and affirmed by the Second Circuit; an order for which Respondent offers, beyond these spurious arguments, no reason why he should not pay.[4]

---

[4] In its Response, Respondent repeatedly argues that there is no SEC Order because it merely "sustained" the NASD sanction.  Resp. Response, at 4.  This unquestionably is an order.  See Vittor, 323 F.3d at 934-935 ("Although the SEC order does not expressly command Vittor to pay the monetary sanctions, the order sustained the NASD's disciplinary action against Vittor and effectively commanded him to pay the restitution, fines, and costs. Thus, the SEC's order sustaining the NASD's disciplinary sanctions against Vittor was an 'order' within the meaning of section 21(e)(1).").  Nor should Respondent mistake this Court's Order as "not a real order" merely because I am enforcing the SEC Order.

### b. The SEC's application was filed on time.

Respondent also argues that the SEC's application was made out of time. 28 U.S.C. § 2462 requires that any "action, suit or proceeding for the enforcement of any civil fine [or] penalty…shall not be entertained unless commenced within five years from the date when the claim was first accrued." 28 U.S.C. § 2462. The Federal Rules of Civil Procedure, as amended in 2009, state that:

> When the period is stated in days or a longer unit of time: (a) exclude the day of the event that triggers the period; (b) count every day, including Saturdays, Sundays, and legal holidays; and (c) include the last day of the period

Fed. R. Civ. Proc. 6(a). The claim accrued on January 6, 2006 and the SEC filed its application on January 6, 2011. Respondent argues that due to the intervening leap year in 2008, the SEC should have filed its application on January 5, 2011, because "every day must be counted." Resp. Opp., at 8. Respondent relies on what it purports to be Black's Law Dictionary's definition of a year, claiming that a year is defined as 365 days. According to that reasoning, the statute of limitations expires after 1,825 days, the product of 5 and 365. Even if this definition were binding on the Court, which it is not, Respondent fails to note the other given definitions such as a year is "twelve calendar months beginning January 1 and ending December 31" and a natural year is "The period of 365 days and about 6 hours, or the time it takes the earth to orbit the sun." Black's Law Dictionary 1754 (9th ed. 2004). Under either of these definitions, the SEC's application was timely.

The issue of whether a leap year shortens, by one day, a period of time that is measured in years has been addressed many times, in many different contexts, and courts are unanimous in holding that a period of time measured in years is not shortened by a day because of a leap year. See, e.g., U.S. v. Hurst, 322 F.3d 1256, 1260 (10th Cir. 2003) ("When a statute of limitations is

measured in years, the last day for instituting the action is the anniversary date of the relevant act.  The anniversary date is the last day to file even when the intervening period includes the extra leap year day."); Chevere-Rodriguez v. Pagan, 114 F. App'x 412, 414 (1st Cir. 2004) ("Since the year 2000 was a leap year, Chevere-Rodriguez had 366 days in which to sue."); Merriweather v. City of Memphis, 107 F.3d 396, 398 (6th Cir. 1997); Carreras-Rosa v. Alves-Cruz, 127 F.3d 172, 175 (1st Cir. 1997).[5]  The SEC's time to file was not shortened because of an intervening leap year.[6]

## IV.   CONCLUSION

For the above reasons, I find that the SEC has met its burden, and done so in a timely manner; the application is hereby granted and Respondent is to comply with the January 6, 2006, SEC Order in its entirety.  An appropriate order will be entered in connection with this opinion.


Dated: June 19, 2012                               /s/    Freda L. Wolfson
                                                   Honorable Freda L. Wolfson
                                                   United States District Judge

---

[5] In its Response, Respondent cites to SEC v. Kearns, 691 F. Supp. 2d 601, 609 (D.N.J. 2010). However, the court in Kearns found that the SEC's action was brought in a timely manner, and did so on other grounds completely inapposite to Respondent's argument. Id. at 610.

[6] Respondent also argues that the 2009 modifications to the Federal Rules of Civil Procedure alter the applicability of former case law and that the Rules' new language mandating the counting of every day somehow changes the definition of a year, although he does not cite a single case to support this interpretation. Nowhere do the 2009 modifications change the definition of a year.  Instead, the modifications pertain only to periods of days and weeks, not years. See Fed. R. Civ. P. 6, Comments to the 2009 Amendments.